POSINI TAUILIILI, JR., Plaintiff

v.

AMERICAN SAMOA GOVERNMENT and
EDDIE SAMUELU, Defendants

High Court of American Samoa
Trial Division

CA No. 75-88

November 29, 1989

---

Before KRUSE, Chief Justice, TAUANU'U, Chief Associate Judge, and MATA'UTIA, Associate Judge.

Counsel: For Plaintiff, Charles V. Ala'ilima
For Defendant American Samoa Government, Richard D. Lerner, Assistant Attorney General

Plaintiff Posini Tauiliili was severely injured after an automobile in which he was riding ran off the road and crashed into some trees. The defendant Eddie Samuelu was the driver of the vehicle involved, which belonged to his employer, the American Samoa Government. Samuelu was clearly negligent in the manner in which he operated the vehicle.

Plaintiff seeks damages from the government on (a) the basis of the common law doctrine of *respondeat superior*; and (b) the theory that the Compulsory Insurance statute, A.S.C.A. §§ 22.2001 et seq., provides a remedy against the government, as self insurer, for the torts of its permittees.

*Facts*

Samuelu, who had long departed the territory before process was served on him, worked as a cameraman for the government television station. One particular Friday, after work hours, the station's employees held a "Tofa" (farewell) party for a departing fellow worker. For Samuelu, the party escalated into a night out on the town, even though

62

he was scheduled to work early the next morning to cover a certain sporting event. In the early hours of the morning, Samuelu decided to go to the station and pick up the station's vehicle which he and a co-worker would be using to attend the coverage of the sporting event. Samuelu was then in no condition to be operating a vehicle; however, he found a friend to drive with him to Taputimu where they encountered plaintiff and others. Plaintiff and his friends were invited to go riding to the airport and after they got into the car Samuelu drove off at such a great rate of speed that he soon lost control of the vehicle and ran it off the road.

The evidence also revealed that Samuelu took the vehicle contrary to published station policies and duly promulgated government regulations regarding the private use of office vehicles. The station manager at the time testified that Samuelu's actions were not authorized and he was dismissed from employment as a result.

*Discussion.*

### A. Vicarious Liability

This Court has jurisdiction over civil actions against the government for personal injury "caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment." A.S.C.A. § 43.1209. Subject to a number of specific exceptions, the government is liable in the same manner and to the same extent as a private individual under like circumstances. A.S.C.A. § 43.1203(a).

We find that the defendant Samuelu was not, at the time of injury, acting within the scope of his office or employment. His taking of the vehicle was unauthorized and contrary to his employer's written directives. He was, at all relevant times, clearly on a frolic of his own. To read an employment purpose into his actions because of the fact that he was scheduled to work later that morning would be stretching the limits of credulity. We conclude against plaintiff's claim of vicarious liability.

### B. Statutory Liability

Although this aspect of plaintiff's claim raises very interesting issues, those issues will have to be left for another day. Assuming that the Compulsory Insurance statute creates a new basis for liability on the

63

part of a vehicle owner, that liability would be dependent on whether the driver had the owner's "express or implied permission." *See* A.S.C.A. § 22.2003 (2).

There was no evidence of express permission given to Samuelu to take the vehicle after work hours. In terms of implied permission, such permission is inferred from past occasions of acquiescence or absence of objection in circumstances signifying consent on the part of the vehicle owner. *Sataua v. Himphill*, 5 A.S.R.2d 61 (1987). The evidence here was quite contrary to a showing of acquiescence and passive consent. A written statement of policies issued by the station manager and dated January 8, 1987, contained, among other things, a directive forbidding the use of station vehicles after hours or on weekend assignments without the manager's prior approval. Additionally, and some three months before the collision, the Governor himself sent out a memorandum, dated May 20, 1987, to all government departments regarding the use of government vehicles. He specifically pointed to applicable rules and regulations set forth in the American Samoa Administrative Code pertaining to the "authorized" use of government property. The Governor's concerns were in turn raised by the station manager at staff meetings, and copies of his memorandum were circulated to the staff. We conclude that no permission was given.

Finally, plaintiff's counsel at closing arguments also invited the Court to consider "negligent entrustment" as an alternative basis of liability. The submission made is that the government was negligent in the manner in which its vehicle was secured. Counsel for the government, on the other hand, objects to the interjection of a new theory at the conclusion of the proceedings.

The government's objection is well taken and sustained. A negligent entrustment theory means an allegation of negligent conduct or omission on the part of an employee *other* than the driver Samuelu. This is an entirely new claim. The complaint (and the administrative claim) only alerted the government to defend a claim based on the allegation that Samuelu's conduct alone was the *proximate cause* of damage.

For the foregoing reasons, plaintiff's complaint against the American Samoa Government is dismissed.

It is so Ordered.